**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

CARMEN VIDAL-HALLETT,

                Plaintiff,

      v.                           Case No. 1:19-cv-05105

THE SCHOOL OF THE ART                JURY TRIAL DEMANDED
INSTITUTE OF CHICAGO,

                Defendant.

## ANSWER TO PLAINTIFF'S COMPLAINT

NOW COMES Defendant, THE SCHOOL OF THE ART INSTITUTE OF CHICAGO, by and through its attorneys, MILLER, CANFIELD, PADDOCK AND STONE, P.L.C., and for its Answer to Plaintiff's Complaint, states and pleads as follows:

## NATURE OF THE CASE

1.      This two-count action arises from an employment dispute. Plaintiff alleges unlawful discrimination on the basis of national origin in violation of the Title VII of the Civil Right Act of 1964, as amended, 42 U.S.C.S. §2000e-2(a)(1), and, unlawful retaliation for exercising rights protected under Title VII of the Civil Rights Act of 1964, 42 U.S.C.S. §2000e-3(a).

**ANSWER**: Defendant admits that paragraph one accurately summarizes the allegations made, but denies any inference that the allegations are accurate or have merit.

## THE PARTIES

2.      Plaintiff, Carmen Vidal-Hallett, is a resident of Cook County, Illinois, and at all times relevant to this Complaint, was an employee of Defendant within the meanings of 42 U.S.C.S. §2000e(f).

**ANSWER**: Defendant admits that Plaintiff is a resident of Cook County, Illinois, and that she was employed by Defendant from approximately March 17, 2015 to April 26, 2018. Defendant otherwise denies the allegation of paragraph two.

3.     Defendant, The School of the Art Institute of Chicago ("SAIC"), is a private university associated with the Art Institute of Chicago, and at all times relevant to this Complaint, was an employer of Plaintiff within the meanings of 42 U.S.C.S. §2000e(b).

**ANSWER**:     Defendant admits the allegations of paragraph three.

## PROCEDURAL HISTORY

4.     On June 26, 2018, Ms. Vidal-Hallett, through counsel, filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging unlawful discrimination on the basis of disability.

**ANSWER**:     Defendant admits the allegations of paragraph four.

5.     On April 29, 2019, the EEOC issued a Notice of Right to Sue.

**ANSWER**:     Defendant admits the allegations of paragraph five.

## JURISDICTION AND VENUE

6.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §1331.

**ANSWER**:     Defendant admits the allegations of paragraph six.

7.     Venue is proper under 28 U.S.C.S. §1391(b) because the unlawful employment practices alleged herein occurred in Cook County, Illinois, which is located within geographical area covered by the U.S. District Court of the Northern District of Illinois, Eastern Division.

**ANSWER**:     Defendant admits the allegations of paragraph seven, but denies any inference that any unlawful employment practice occurred.

## PLAINTIFF'S EMPLOYMENT WITH DEFENDANT

8.     Ms. Vidal-Hallett has been an architect for over thirty years and is an International Associate of the American Institute of Architects ("AIA").

**ANSWER**:     Defendant neither admits nor denies paragraph eight as it lacks sufficient information to form a reasonable belief as to the accuracy thereof.

9.     Defendant hired Ms. Vidal-Hallett on or about March 17, 2015 as a Project Manager for the Instructional Resources Facilities Management, Design and Construction Division.

**ANSWER**:     Defendant admits the allegations of paragraph nine.

10.     Defendant tasked Ms. Vidal-Hallett with managing the design and construction of specific renovation projects at Defendant.  This included renovations of the Residence Hall, various classrooms, and administrative offices throughout campus.

**ANSWER**:     Defendant admits that paragraph 10 describes some of the duties assigned

to Plaintiff, but denies that it is a complete listing of all of her responsibilities.

11.     At the beginning of Ms. Vidal-Hallett's employment, she reported to Ron Kirkpatrick, Executive Director of Design and Construction.

**ANSWER**:     Defendant admits the allegations of paragraph 11.

12.     In November 2017, Mr. Kirkpatrick was replaced by Chiaka Patterson.

**ANSWER**:     Defendant denies the allegations of paragraph 12, other than to admit that

in November 2017 Chiaka Patterson became Plaintiff's supervisor.

13.     While Mr. Kirkpatrick was Ms. Vidal-Hallett's supervisor, Ms. Vidal-Hallett was not disciplined or counseled for unsatisfactory job performance.

**ANSWER**:     Defendant denies the allegations of paragraph 13.

14.     From November 2017 to March 14, 2018, Ms. Patterson expressed no dissatisfaction with Ms. Vidal-Hallett's job performance.

**ANSWER**:     Defendant denies the allegations of paragraph 14.

15.     On or about March 14, 2018, Ms. Patterson presented Ms. Vidal-Hallett with a written 60-day Performance Improvement Plan ("PIP").

**ANSWER**:     Defendant admits the allegations of paragraph 15.

16.     The PIP was a complete surprise.  Up to this point, Ms. Vidal-Hallett had no indication from Ms. Patterson or anyone else that she was performing her job inadequately.

**ANSWER**:     Defendant denies the allegations of paragraph 16.

17.     Ms. Patterson explained that Ms. Vidal-Hallett would be evaluated every two weeks to see if her job performance improved.

**ANSWER**:     Defendant admits the allegations of paragraph 17.

18.     At these subsequent evaluation meetings, Ms. Vidal-Hallett was told that she was continuing to fail, even though at weekly project meetings, Ms. Patterson and others recognized

that Ms. Vidal-Hallett's projects were going well because of the work Ms. Vidal-Hallett was doing.

**ANSWER**: Defendant denies the allegations of paragraph 18, other than to admit that in evaluation meetings subsequent to Vidal-Hallett being placed on the performance improvement plan, Patterson informed Vidal-Hallett that she was failing to improve as required by the plan.

19. On or about April 26, 2018, Ms. Vidal-Hallett was given the opportunity to resign and was offered a severance package.

**ANSWER**: Defendant denies the allegations of paragraph 19.

20. While Ms. Vidal-Hallett was trying to decide whether to resign and take the severance package, Defendant terminated her employment and forbade her from being on campus.

**ANSWER**: Defendant denies the allegations of paragraph 20, other than to admit that Plaintiff was at one point told not to come to campus while the severance offer was being considered.

21. Shortly after the termination, Defendant remotely erased Ms. Vidal-Hallett's work-issued laptop.

**ANSWER**: Defendant denies the allegations of paragraph 21.

22. In the process of doing so, Defendant also removed personal documents and projects from Ms. Vidal-Hallett's personal external hard drive.

**ANSWER**: Defendant denies the allegations of paragraph 22.

23. As a result of her termination, Ms. Vidal-Hallett suffered a loss of wages and benefits, including tuition remission for Ms. Vidal-Hallett's daughter, who was a full-time college student at Defendant.

**ANSWER**: Defendant denies the allegations of paragraph 23, other than to admit that as a consequence of Vidal-Hallett's separation from employment, she was no longer entitled to receive salary and benefits including tuition remission at the school for herself and certain family

4

members, and that Plaintiff's daughter was a student at the Defendant at the time of Plaintiff's separation from employment.

24.     Ms. Vidal-Hallett also lost personal documents and projects, suffered extreme emotional distress and embarrassment, and suffered other damages, as a result of her termination.

**ANSWER**:     Defendant denies the allegations of paragraph 24.

**COUNT I: Discrimination, Title VII of the Civil Rights Act of 1964, as amended**

25.     Ms. Vidal-Hallett is perceived as Hispanic because of her Brazilian and Spanish heritage.

**ANSWER**:     Defendant admits that Vidal-Hallett is of Brazilian and Spanish national origin and is likely perceived by some people as "Hispanic."

26.     Ms. Vidal-Hallett has lived and worked as an architect in the United States for almost 30 years.  She speaks English fluently, albeit with a slight accent.

**ANSWER**:     Defendant neither admits nor denies the allegations of paragraph 26 as it lacks sufficient information for a reasonable belief as to their accuracy, other than to admit that Plaintiff is fluent in English.

27.     From the time of hire until her termination, Ms. Vidal-Hallett performed her job duties at or above her employer's reasonable expectations.

**ANSWER**:     Defendant denies the allegations of paragraph 27.

28.     Between March 14, 2018 and her termination, Ms. Vidal-Hallett performed her job duties at or above her employer's reasonable expectations.

**ANSWER**:     Defendant denies the allegations of paragraph 28.

29.     Ms. Vidal-Hallett's accent and her status as a non-native English speaker, was a motivating factor in discriminatory treatment against her by Defendant.

**ANSWER**:     Defendant denies the allegations of paragraph 29.

30.     Defendant's employees who speak English as their first language do not suffer adverse employment actions when they commit frequent spelling and/or grammar errors.

**ANSWER**: Defendant denies the allegations of paragraph 30, except to admit that adverse actions would not be imposed on employees for committing grammar or spelling errors to the extent that the errors were unrelated to the function of their job or were not otherwise part of a wider pattern of performance shortcomings.

31. Defendant's stated reasons for Ms. Vidal-Hallett's termination are untrue and/or are not terminable offenses when committed by someone who is a native speaker of the English language. Rather, these stated reasons are pretext for unlawful discrimination.

**ANSWER**: Defendant denies the allegations of paragraph 31.

32. As a result of Defendant's discrimination, Ms. Vidal-Hallett suffered lost wages and benefits, and suffered extreme emotional distress and embarrassment.

**ANSWER**: Defendant denies the allegations of paragraph 32.

## COUNT II: Retaliation for Protected Activity, Title VII of the Civil Rights Act of 1964

33. Plaintiff restates and realleges paragraph 1 through 24, as stated herein.

**ANSWER**: Defendant incorporates by reference herein its answers to paragraphs 1-24.

34. Ms. Vidal-Hallett is perceived as Hispanic because of her Brazilian and Spanish heritage.

**ANSWER**: Defendant admits that Vidal-Hallett is of Brazilian and Spanish national origin and is likely perceived by some people as "Hispanic."

35. Ms. Vidal-Hallett has lived and worked as an architect in the United States for almost 30 years. She speaks English fluently, albeit with a slight accent.

**ANSWER**: Defendant neither admits nor denies the allegations of paragraph 35 as it lacks sufficient information for a reasonable belief as to their accuracy, other than to admit that Plaintiff is fluent in English.

36. From the time of hire until her termination, Ms. Vidal-Hallett performed her job duties at or above her employer's reasonable expectations.

**ANSWER**: Defendant denies the allegations of paragraph 36.

6

37. Between March 14, 2018 and her termination, Ms. Vidal-Hallett experienced multiple instances where her English proficiency was criticized or questioned by her supervisors.

**ANSWER**: Defendant denies the allegations of paragraph 37.

38. Ms. Vidal-Hallett objected to this insult, and told her supervisors that these comments were discriminatory.

**ANSWER**: Defendant denies the allegations of paragraph 38, other than to state that when Plaintiff stated her belief that she was being criticized for having an accent, her supervisors informed her that the criticism was directed at the substance and timing of her communications, not her writing or speaking style.

39. Ms. Vidal-Hallett sent surveys to her co-workers, in-house clients, and outside vendors to seek feedback on her job performance, which included communication skills.

**ANSWER**: Defendant admits that Plaintiff sent out communications purporting to be official departmental surveys to some internal clients and that the surveys included questions about communications. Defendant denies that Plaintiff had authorization to send out the surveys in the form that she did.

40. When Ms. Vidal-Hallett's supervisor learned Ms. Vidal-Hallett was asking people to write letters and fill our surveys on her behalf, the supervisor forbade Ms. Vidal-Hallett from doing so in the future, and told Ms. Vidal-Hallett that she was not allowed to speak to anyone about the evaluation process.

**ANSWER**: Defendant denies the allegations of paragraph 40.

41. The Director of Human Resources referenced Ms. Vidal-Hallett's discrimination claim when offering Ms. Vidal-Hallett a severance package in exchange for Ms. Vidal-Hallett's resignation, during the meeting described in Paragraph 20 above.

**ANSWER**: Defendant denies the allegations of paragraph 41.

42. Others who did not allege discrimination against Defendant, and object to discriminatory behavior, were treated more favorably than Ms. Vidal-Hallett.

**ANSWER**: Defendant denies the allegations of paragraph 42.

43. Objecting to discrimination and making complaints about discriminatory conduct is protected activity under Title VII of the Civil Rights Act of 1964, as amended.

**ANSWER**: Defendant denies the allegations of paragraph 43 other than to admit that Title VII prohibits retaliation against employees for engaging in certain defined types of conduct.

44. Retaliating against employees for this conduct violates the anti-retaliation provisions of Title VII of the Civil Rights Act of 1964, as amended.

**ANSWER**: Defendant denies the allegations of paragraph 44, other than to admit that Title VII prohibits retaliation against employees for engaging in certain defined types of conduct.

45. Ms. Vidal-Hallett engaged in protected activity, and was terminated in part because of that protected activity.

**ANSWER**: Defendant denies the allegation of paragraph 45.

46. As a result of Defendant's retaliatory conduct, Ms. Vidal-Hallett suffered lost wages and benefits, suffered extreme emotional distress and embarrassment, and suffered other damages.

**ANSWER**: Defendant denies the allegations of paragraph 46.

## AFFIRMATIVE DEFENSES

Upon information and belief, some or all of the damages claimed by Plaintiff should be barred by her failure to take prompt and reasonable steps to secure comparable employment and mitigate her damages.

## COUNTERCLAIM

1. At the time of her employment, Defendant provided Plaintiff with a cell phone and laptop computer to use in conjunction with her work for Defendant.

2. Defendant made clear that the laptop and cell phone remained the property of the Defendant and were being provided for Plaintiff's use in her job only for so long as she remained an employee of Defendant.

3.      Upon Plaintiff's resignation from employment with Defendant, Defendant made demand that Plaintiff return the laptop and cell phone to Defendant.

4.      Defendant has reiterated its demand that Plaintiff return the laptop and cell phone on multiple occasions.

5.      Despite these demands for return of its property, Plaintiff never returned the cell phone and laptop to the Defendant.

6.      As a result of Plaintiff's retention of the laptop and cell phone, Defendant was forced to incur the cost of securing replacement for each of the laptop and cell phone at a cost to Defendant of $2,000.00.

WHEREFORE, Defendant demands judgment of Plaintiff in the amount of $2,000.00, together with its costs of the action and such other and further relief as the Court deems warranted.

Dated:  September 30, 2019                                    Respectfully submitted,

                                                             THE SCHOOL OF THE ART
                                                             INSTITUTE OF CHICAGO


                                                             By:*/s/Robert T. Zielinski*
                                                                    Robert T. Zielinski

Robert T. Zielinski, Esq.
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
225 West Washington Street
Suite 2600
Chicago, Illinois  60606
Telephone:  (312) 460-4216
Facsimile:  (312) 460-4201
Email:  zielinski@millercanfield.com
**Attorney for Defendant**

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 30, 2019, he electronically filed the foregoing ***Answer to Plaintiff's Complaint*** with the Clerk of the Court using the Court's CM/ECF system which will send notification of such filing to all counsel of record.


*/s/Robert T. Zielinski*
Robert T. Zielinski